**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK SNAVELY,** | **:** | |
| **Plaintiff** | **:** | **Civil Action No. 1:08-cv-2165** |
| | **:** | **(Chief Judge Kane)** |
| **v.** | **:** | |
| | **:** | |
| **DAVID ARNOLD, ROBERT ANSPACH, WILLIAM HARVEY, DANIEL WRIGHT, ROBERT McALLISTER, CITY OF LEBANON, and WILLIAM CARPENTER,** | **:** | |
| **Defendants** | **:** | |

# MEMORANDUM

The background of this order is as follows:

Plaintiff, a former police officer with the City of Lebanon Police Department, was terminated from his position on March 16, 2008. (Am. Comp. ¶ 40.) Following his termination, Plaintiff sought and obtained employment with the Township of Annville. (Id. ¶ 54.) Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging that the City of Lebanon and six individual Defendants deprived him of his constitutional rights. The alleged constitutional violations are premised on Plaintiff's alleged retaliatory discharge and on allegedly defamatory statements made to Plaintiff's new employer.

All Defendants have moved to dismiss the complaint variously alleging that it fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and public official immunity under Pennsylvania state law.

The Court is guided by the pleading standards the Supreme Court recently announced in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) and by long-standing principles requiring that a plaintiff must establish an

individual claim for relief as to *each* named defendant. See Thomas v. Independence Twp., 463 F.3d 285 (3d Cir. 2006) (dismissing claims where no allegations were made that defendants were personally involved in the wrongs alleged).[1] As will appear more fully below, Plaintiff's complaint is seriously deficient when analyzed under these standards. The complaint is a lengthy recitation of events which names, but does not necessarily identify, all Defendants, their relationship to Plaintiff, or their role in effectuating the harm alleged.

Plaintiff alleges that in 2006, with the permission of his superiors, he began to investigate an old unsolved murder case on his own time. (Am. Comp. ¶¶ 16, 19.) In the course of his investigation, Plaintiff encountered Michelle Gooden, a private citizen who claimed to also be investigating the case and writing a book on the murder. (Id. ¶ 20.) Plaintiff claims that he was "harassed" by Chief of Police Defendant Harvey because Gooden generated a controversial newspaper article about the case. (Id. ¶¶ 23-24.) Months later, after a suspect had developed, Gooden made allegations to Plaintiff that Defendant Arnold had a personal involvement with the case: his ex-wife allegedly had an affair with the murder suspect's father. (Id. ¶ 26.) Gooden requested Arnold's recusal from the case; Plaintiff took no part in initiating the newspaper article or inviting Arnold's recusal. (Id. ¶ 27.)

In February of 2008, Defendant Wright chastized Plaintiff for attending a memorial service for the victim, and he accused Plaintiff of leaking information to the citizen investigator. (Id. ¶ 32(a).) Thereafter, Defendants Wright and McAllister notified Plaintiff that he was the

---

[1]See also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.").

subject of an internal investigation for removing evidence. (Id. ¶ 36.) Defendants Harvey, Anspach, and McAllister notified Plaintiff of his termination on March 6, 2008. (Id. ¶ 40.)

Plaintiff alleges that, following his termination, he accepted part time work with the Annville Police Department and that Defendant Arnold wrote to that department advising that he would refuse to prosecute charges initiated by Plaintiff. (Id. ¶¶ 54-55.) Defendant Carpenter advised two citizens that Plaintiff was dismissed from employment at the City of Lebanon Police Department for stealing. (Id. ¶ 56.)

Plaintiff maintains that these events give rise to four claims: § 1983 civil rights violations based on First Amendment retaliation, conspiracy in violation of state and federal law, state law wrongful discharge, and state law defamation. The facts alleged are sufficient to support only the defamation claim. Accordingly, the motions to dismiss will be granted in part.

**A. Retaliation for Protected Speech**

To bring a claim for First Amendment retaliation under 42 U.S.C. § 1983, a public employee must allege 1) that he or she engaged in "protected speech," 2) that the government employer responded in a matter sufficient to deter a person of "ordinary firmness" from exercising his or her First Amendment rights, and 3) causation between the protected speech and the retaliatory action. Miller v. Clinton County, 544 F.3d 542, 547-48 (3d Cir. 2008); Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). To be protected, the speech at issue must be made by the plaintiff as a citizen, rather than as an employee, and the speech must implicate a matter of public concern. Miller, 544 F.3d at 548.

The complaint fails to identify words or conduct Plaintiff alleges to be the protected speech which is the subject of the claimed retaliation. In fact, Plaintiff specifically disclaims

making any statement about his investigation or releasing police reports to the newspaper, to his superiors, or to the Attorney General, despite Gooden's requests. Thus, Plaintiff has not alleged any spoken words that constitute protected speech under the First Amendment.[2]

Plaintiff's actual, physical investigation into the unsolved murder, is also not protected conduct in this case. See, e.g., Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 158 (3d Cir. 2002) (discussing that First Amendment "speech" includes certain types of expressive conduct, as well as words). To determine whether given conduct is protected speech, a court must conduct a fact-intensive inquiry into the nature and factual context of the conduct, as well as the environment in which it was undertaken. Id. If the "activity was sufficiently imbued with the elements of communication to fall within the First Amendment's scope," it is protected. Id. (quoting Spence v. Washington, 418 U.S. 405, 409-10 (1974)). An action is "sufficiently imbued with elements of communication" if the plaintiff "intended subjectively for his conduct to communicate to persons whom he expected to observe it . . . [and] observers understood the message the [plaintiff] intended his conduct to convey." Id. at 161. Thus, the inherent communicative and meaningful nature of the conduct is important. See Cunningham v. New Jersey, 452 F. Supp. 2d 591, 595-95 (D.N.J. 2006). The burden is on the putative speaker to prove that his conduct is "sufficiently imbued with elements of communication." Tenafly, 309 F.3d at 161.

Applying the above test to the facts articulated by Plaintiff, the Court finds that no

[2] A claim for First Amendment retaliation cannot be based upon his employer's mistaken belief that he engaged in protected speech. Fogarty v. Boles, 121 F.3d 886, 887 (3d Cir. 1997) ("[I]n the absence of speech, or at the extreme, intended speech, there has been no constitutional violation cognizable under section 1983 based on an asserted 'bad motive' on the part of the defendant.").

protected speech has been alleged. Plaintiff's complaint does not allege that his action in recommencing the unsolved murder investigation, his attendance at the memorial service, or his cooperation with Gooden was intended to convey speech. Thus, Plaintiff's allegations are insufficient to state a First Amendment claim. Absent allegations of an expressive intent and recitation of non-conclusory facts in support of that claim, the Court cannot derive an expressive intent from a police officer engaged in investigative duties, even on a "volunteer" basis.[3]

Therefore, because Plaintiff's actions in investigating the unsolved murder were not inherently expressive, and Plaintiff alleges no facts to support a finding that he intended to convey a message or was likely to be interpreted as conveying a message, the Court finds that Plaintiff has failed to adequately allege that he engaged in protected speech in investigating the Reber murder.

Should Plaintiff restate his claim consistent with the standards outlined here, the Court notes that Plaintiff must specify the facts alleged against each individual, named Defendant. The complaint now before the Court does not satisfy this most basic pleading requirement, but because no constitutional claim is alleged, it is not necessary to address this pleading deficiency in greater detail.

**B. Retaliation for Filing a Grievance**

Plaintiff alleges the following facts in support of his claim of retaliation for filing a grievance: that he filed a claim for unemployment compensation at an unspecified date, that he

---

[3] The Fourth Circuit has similarly held in Marciariello v. Sumner, 973 F.2d 295 (4th Cir. 1992). In that opinion, the Fourth Circuit "easily conclude[d]" that the plaintiffs' secret, internal investigation into the possible misconduct of a fellow police officer was not protected speech under the First Amendment because the Plaintiff deliberately chose not to speak. Id. at 299.

was awarded benefits in August 2008, that the City of Lebanon appealed the decision to the "Workers Compensation Review Board [sic]" where it won the appeal, and that Plaintiff then appealed the Review Board's reversal to the Commonwealth Court. (Am. Comp. ¶¶ 50, 52.)

First, the Court finds no precedent to support Plaintiff's assertion that filing a claim for unemployment benefits qualifies as a petition for redress of grievances protected by the First Amendment,[4] but the issue has not been adequately briefed, and the actual unemployment benefits claim is not on the record for the Court's review. Assuming, however, Plaintiff's unemployment claim is a petition for redress of grievances protected by the First Amendment, Plaintiff has still failed to state a claim because he must also prove 1) the City of Lebanon's actions were "sufficient to deter a person of ordinary firmness" from exercising his or her rights, and 2) causation between the filing of the complaint and the alleged retaliatory actions.

To determine whether a person of ordinary firmness would be deterred by an action, the Third Circuit Court of Appeals requires that a district court consider "the status of the retaliator,

---

[4]The Third Circuit Court of Appeals has determined that filing a claim for worker's compensation benefits may constitute a grievance worthy of First Amendment protection, but has made no such indication regarding unemployment compensation claims. Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1076 (3d Cir. 1990) ("[Plaintiff] cites no decision holding that the mere filing of a claim for workmen's compensation falls within the right to petition. . . . Nonetheless, we are reluctant to foreclose [Plaintiff's] claim as a matter of law."). Nonetheless, while some courts have required a claim for benefits to implicate public concerns before it will be protected under the Petition Clause, the Third Circuit has instead held that a petition made through a formal mechanism, such as the court system, need not be a matter of public concern to implicate the Petition Clause. San Filippo v. Bongiovanni, 30 F.3d 424, 443 (3d Cir. 1994) (holding that formal petitions for redress need not address a matter of public concern to be protected speech under the First Amendment's Petition Clause, provided they are "non-sham"); cf. Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1226-27 (6th Cir. 1997) ("While the unavailability of unemployment compensation is a matter of public concern, Plaintiffs' request for such benefits . . . is far more a matter of private interest than public concern. Thus, Plaintiffs cannot make out a cause of action under the Petition Clause." (Internal citations omitted)).

the relationship between the speaker and the retaliator, *and the nature of the retaliatory acts*." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)). All things considered, the adverse action must be more than "trivial" to constitute an action sufficient to deter a person of ordinary firmness from exercising his rights. Brennan, 350 F.3d at 419.

Plaintiff alleges no facts to support the requirement that he suffered more than the *de minimus* inconvenience of having to support his allegations before the Unemployment Compensation Board of Review. A reasonable person of ordinary firmness ostensibly fired for work-related misconduct would surely expect that his or her former employer would oppose the claim for unemployment compensation. It is inconceivable that the City of Lebanon's opposition to Plaintiff's petition for unemployment benefits through the lawful channels of the unemployment compensation review structure alone could form the basis of a First Amendment retaliation claim. Plaintiff makes no allegation that the City of Lebanon's opposition to his claim was unduly harassing or exceeded the boundary of proper opposition to such a claim; as such, Plaintiff has not shown that a person of ordinary firmness would be deterred from filing an unemployment compensation claim. Accordingly, Plaintiff's retaliation claim against the City of Lebanon for opposing his claim for unemployment benefits will be dismissed.

Considering Plaintiff's claim that Defendant Arnold's letter was retaliation for filing his petition for redress,[5] Plaintiff fails to state a claim because he does not allege causation between Defendant Arnold's letter and the petition. Plaintiff states: "On or about July 18, 2008, the

---

[5]As stated in Section A, *supra*, Plaintiff failed to adequately allege any protected speech or expressive conduct, thus, neither can Plaintiff properly state a claim that the letter was written in retaliation for his speech or expressive actions.

defendant Arnold wrote . . . a letter to plaintiff's employer, the Township of Annville, Pennsylvania. . . . The letter indicated that Mr. Arnold would not accept criminal cases filed or signed by Mr. Snavely. It also contained a disingenuous threat of investigation." (Am. Comp. ¶¶ 54-55.) This singular factual statement is insufficient to state a claim because it fails to allege causation between the unemployment benefits claim and Defendant Arnold's letter. Plaintiff articulates no factual basis upon which the Court could draw an inference that Defendant Arnold wrote the letter to retaliate against Plaintiff's petition for unemployment benefits.[6] Plaintiff alleges merely that both happened. This action is no more than "consistent with" Plaintiff's allegation of retaliation for filing a petition and short of causally connected to the filing. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) ("Taken as true, these allegations are consistent with petitioners' purposefully designating detainees 'of high interest' because of their race, religion or national origin. But given more likely explanations, they do not plausibly establish this purpose."). In order to "'nudge' his claim . . . 'across the line from conceivable to plausible,'" Plaintiff must include facts sufficient to support causation between his protected speech and the retaliatory conduct. Accordingly, Plaintiff's claim for First Amendment retaliation against Defendant Arnold is dismissed.

---

[6]In fact, Plaintiff alleges several other facts which serve as more likely causes for the letter—that Defendant Arnold blamed Plaintiff for Arnold's "exposure on matters which were public facts but embarrassing to him" (Id. ¶ 48); that Arnold's ex-wife's medical records had been acquired (Id. ¶ 32(h)); and that Arnold was upset Plaintiff had attended the memorial service for Peggy Reber (Id. ¶ 32(b)). The Court takes no position on the likely motivation behind Defendant Arnold's letter, but only notes that Plaintiff's complaint makes no factual connection between the writing of the allegedly retaliatory letter and the protected action, as is required to make out a First Amendment retaliation claim.

### C. Section 1983 Conspiracy

Next, Plaintiff alleges a § 1983 conspiracy claim against Defendants. Defendants contend that Plaintiff has not stated a conspiracy claim both because he has failed to establish an underlying constitutional violation and because he has failed to outline facts to support a finding of a conspiracy. The Court agrees. Even if the Court assumes Plaintiff can state an underlying violation in an amended complaint, there are insufficient factual allegations to support Plaintiff's allegation of conspiracy. Indeed, far from alleging facts that must be credited, the complaint alleges only legal conclusions against Defendants as a group and invites the Court to treat them wholesale as a conspiratorial unit.

Although Defendants appear to be affiliated with the City of Lebanon Police Department and appear to be in Plaintiff's chain of command, Plaintiff has alleged only that they advised him of the ongoing investigation against him or advised him of his eventual termination. Plaintiff does not allege that these Defendants made the decision to terminate him or even recommended his termination. Nor does Plaintiff articulate a policy or policy-maker's action or decision upon which liability of the City of Lebanon is founded. Absent specific allegations, Defendants cannot be called to answer Plaintiff's generalized complaint, and their motions to dismiss are properly granted.

This conclusion is dictated upon analyzing Plaintiff's complaint under the rubric recently recommended by the Supreme Court in Iqbal. While Plaintiff is not required to set forth "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level'" in order to survive a 12(b)(6) motion to dismiss. Phillips v. County of

Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). To determine which assertions are entitled to the presumption of truth, a court should first identify and disregard the legal conclusions. Iqbal, 129 S.Ct. at 1950 (2009). Then, using only the well-pleaded factual assertions, a court should "determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. While "facial plausibility" of the facts is "not akin to a 'probability requirement,'" it requires that the pleaded facts articulate "more than a sheer possibility that a defendant has acted unlawfully," and be more than "'merely consistent with' a defendant's liability." Id. at 1949 (quoting Twombly, 550 U.S. at 556-57).

To state a § 1983 claim for conspiracy, a plaintiff must allege both the deprivation of a constitutional right and the existence of a conspiracy. PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 832 n.23 (D.N.J. 1993) (citing Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990)). As determined in the preceding sections, Plaintiff has failed to allege any constitutional violation. Moreover, Plaintiff's only suggestion regarding the existence of a conspiracy is that "[t]hese defendants then came together and used their official power and positions to conjure up false charges against the plaintiff which were not based upon fact at all but were used as a pretext by these defendants to deter the plaintiff from the exercise of his 1st Amendment rights." (Am. Comp. ¶ 49.) With no other factual allegations to support the existence of a conspiracy, this statement is nothing more than a conclusory assertion of the type which Iqbal ruled is not entitled to a presumption of truth. Iqbal, 129 S.Ct. at 1951 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

Plaintiff's assertions that multiple parties accused him of misconduct, were present when

he was told he was under internal investigation, or attended his termination meeting fall short of supporting his legal conclusion that there was an agreement or conspiracy to violate his rights. (Am. Comp. ¶¶ 32, 36, 37, 50.) Plaintiff never alleges which Defendants had an agreement, what the agreement was for, when it was instituted, or any other bit of information which might support the existence of a "meeting of the minds" to infringe Plaintiff's rights. Such allegations do not, without more, support the existence of a conspiracy. Therefore, the Court finds that Plaintiff has failed to state a claim, and his § 1983 conspiracy claim will be dismissed as against all Defendants.

The Court is ever mindful that Plaintiff is entitled to have well-pled facts credited at this stage of the proceedings. If there exist facts to support Plaintiff's claims, they have not been well-pled. Until they are, Plaintiff's claims cannot go onward. Sweeping, generalized, blanket assertions against a group will not suffice, especially where Defendants may have defenses of immunities depending on the factual claims.

**D. State Civil Conspiracy**

Plaintiff's state law civil conspiracy claim is similarly insufficient. To support a state law claim for civil conspiracy, a plaintiff must allege, "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998). As with its federal cousin, a cause of action for civil conspiracy will only lie where a valid underlying claim exists. See McKeeman v. Corestates, 751 A.2d 655 (Pa. Super. Ct. 2000) (quoting Pelagatti v. Cohen, 536 A.2d 1337, 1342 (1987)).

As the Court discussed in the preceding section, Plaintiff does not state in his complaint that an agreement was formed by Defendants to terminate his employment. At no point does he allege which Defendants entered such an agreement, approximately when the agreement was made, or the unlawful goals of the agreement.

Accordingly, Plaintiff has failed to adequately allege a civil conspiracy and this claim is dismissed as to all Defendants.

**E. Wrongful Discharge**

Plaintiff also "complains under Pennsylvania law alleging injuries for unlawful wrongful discharge." (Am. Comp. at 14.) He never states against which Defendants the claim is brought. Plaintiff states only that he was told by Defendant Wright, in the presence of Defendant McAllister and his union representative,[7] that "he was being placed on leave pending an investigation" and that he was "terminated immediately" during a meeting with Defendants Anspach, Harvey, and McAllister. (Am. Comp. ¶¶ 37, 40.) Plaintiff never specifies which of these Defendants are responsible for the wrongful discharge, or whether the allegation is only against the City of Lebanon.[8] Neither does he specify what role each Defendant had in the

---

[7] Although the Court makes no such determination at this point, the Court notes that it is unclear whether Plaintiff, a police officer apparently subject to a collective bargaining agreement, can state a claim for wrongful discharge, given that Pennsylvania Courts have only allowed wrongful discharge actions to lie when brought by at-will employees. Phillips v. Babcock & Wilcox, 503 A.2d 36, 37 (Pa. Super. Ct. 1986); Harper v. American Red Cross Blood Services, 153 F. Supp. 2d 719 (E.D. Pa. 2001) ("Union-represented employees under a collective bargaining agreement cannot maintain a tort action for wrongful discharge when the terms of the collective agreement would otherwise protect the employee from discharge without proper cause."); Lohman v. Borough, 2007 WL 4260943 *14 (M.D. Pa. Nov. 29, 2007).

[8] Should Plaintiff attempt to bring the wrongful discharge claim against the City of Lebanon, the Court notes that the Pennsylvania State Tort Claims Act ("PSTCA") provides immunity for municipalities unless the alleged wrongful acts fall under one of eight articulated

alleged wrongful discharge. Plaintiff does not specifically allege any activity in regard to the termination or internal investigation on the part of Defendants Arnold or Carpenter. Plaintiff's bare allegations do not put Defendants on notice as to who is being alleged to have effectuated his wrongful discharge or how they did so. Accordingly, Plaintiff's claim for wrongful discharge will be dismissed as to all Defendants, with leave to amend, provided that Defendant can allege specific facts to indicate which Defendants brought about his wrongful discharge. In the interest of judicial efficiency, the remaining arguments regarding dismissal of Plaintiff's wrongful discharge claim will only be discussed once it is clear against whom the wrongful discharge claim is alleged.

**F. Defamation**

The allegation of "false light misrepresentation/defamation"[9] is only made against Defendant Carpenter. (Am. Comp. ¶ 3, 56.) In response, Defendant Carpenter argues that these claims must be dismissed on the basis of the Pennsylvania State Tort Claims Act ("PSTCA") and immunity as a high public official. The Court begins, once again, with the sufficiency of the underlying allegations.

---

negligence exceptions. 42 Pa. Cons. Stat. Ann. § 8541-42; Lancie v. Giles, 572 A.2d 827 (Pa. Commw. Ct. 1990). Wrongful discharge is not one of the articulated exceptions. Id. The PSTCA also provides immunity from suit for municipal employees acting within the scope of their duties, unless the alleged acts constitute a crime, actual fraud, actual malice, or willful misconduct. 42 Pa. Cons. Stat. Ann. § 8550; Lancie, 572 A.2d at 830.

[9] Plaintiff articulates his claim as "false light misrepresentation/defamation." (Am. Comp. ¶ 3.) Because the Court is aware of no tort "false light misrepresentation," and other paragraphs of the complaint describe Defendant Carpenter as having "misrepresented facts about the plaintiff placing him in a false light," thus implying that the term is only a description of the defamation, the Court will analyze Plaintiff's claim as one of defamation, rather than as the tort of misrepresentation or false light invasion of privacy.

A defamation claim lies when the victim suffers harm to his reputation so as to "lower him in the estimation of the community or to deter third parties from associating or dealing with him." Blackwell v. Eskin, 916 A.2d 1123, 1125 (Pa. Super. Ct. 2007) (quoting Tucker v. Philadelphia Daily News, 848 A.2d 113, 124 (2004)). Defamation claims against public officials must also allege actual malice. Id. at 1125-26. Unlike with the other claims, Plaintiff provides specific factual allegations indicating that Defendant Carpenter told two people, Doris Belonger and Mike Mangano, on March 28, 2008 and April 7, 2008, respectively, that Plaintiff was "dismissed from his job for 'stealing,'" when Carpenter had "personal knowledge of the issues," surrounding the actual reasons for Plaintiff's termination. (Am. Comp. at 13-14.) Taking these statements as true, Plaintiff has stated a claim for defamation against Defendant Carpenter.

The PSTCA generally immunizes municipalities and municipal employees from tort claims. 42 Pa. Const. Stat. Ann. § 8541-42. It does not provide immunity for claims occurring within eight enumerated exceptions, or to employees accused of willful or malicious misconduct. 42 Pa. Const. Stat. Ann. § 8550; Lancie v. Giles, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990). The allegations Plaintiff makes against Defendant Carpenter are presupposed on malicious and willful misconduct. Plaintiff clearly alleges that Defendant Carpenter was aware of the truth but purposefully, pretextually, and cruelly misrepresented the truth. (Am. Comp. ¶ 56.) Accordingly, the PSTCA will not shield Defendant Carpenter from liability for the alleged willful misconduct against Plaintiff resulting in defamation.

Defendant Carpenter next argues that high public official immunity releases him from liability. Public official immunity is absolute; it exempts high public officials from all suits arising out of acts or statements made within the course of the official's duties or powers,

*including those made with malicious intent*. Lindner v. Mollan, 677 A.2d 1194, 1197 (Pa. 1996) ("[The privilege] is unlimited and exempts a high public official from all civil suits for damages arising out of the false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority." (citing Matson v. Margiotti, 88 A.2d 892 (Pa. 1952))); Montgomery v. City of Phila., 140 A.2d 100, 103 (Pa. 1958). As a County Commissioner, Defendant Carpenter does qualify as a high public official. See Holt v. Nw. Penn. Training P'ship Consortium, Inc., 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997) ("[A]s County Commissioners, Commissioners here are 'high public officials' and, as such, enjoy absolute immunity even when willful misconduct is alleged."). To determine whether remarks made occurred within the scope of the high official's authority, the Court should examine: "the formality of the forum in which the words were spoken, and the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance." Hall v. Kiger, 795 A.2d 497, 501 (Pa. Commw. Ct. 2002).

The complaint lacks the detail and specificity needed to determine whether the statements were made within the scope of Defendant Carpenter's official duties. It is unclear from Plaintiff's complaint and Defendant's brief where, how, and in what context Defendant Carpenter spoke with Doris Belonger and Mike Mangano. Further, no information has been provided as to the relationship between Defendant Carpenter and the third parties. Thus, it is unclear from the record whether Defendant Carpenter was acting in the scope of his official duties at the time he made the allegedly defamatory statements, and the Court cannot apply absolute immunity at this point.

Defendant Carpenter's motion to dismiss is denied in part, as to the defamation claim.

**G. Punitive Damages**

Plaintiff makes clear in his brief in opposition that all Defendants are being sued in their individual capacities and that there is no claim for punitive damages against the City of Lebanon. The entire basis for Defendants' arguments against the applicability of punitive damages is that suit was brought against Defendants in their official capacities. That not being the case, the motion to dismiss Plaintiff's prayer for punitive damages will be denied, though the only remaining claim is against Defendant Carpenter for defamation.

**H. Leave to Amend**

The Third Circuit Court of Appeals requires that district courts allow plaintiffs in civil rights cases leave to amend their complaints prior to dismissal, unless doing so would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004); Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). For this reason, the Court will permit Plaintiff thirty (30) days to amend his complaint to adequately state claims for First Amendment retaliation, conspiracy, and wrongful discharge, noting that Plaintiff must include factual allegations as to each individual Defendant to support the above claims.

**CONCLUSION**

For the foregoing reasons, the Court finds that Defendants' motions to dismiss Plaintiff's claims are granted, with the exception of Plaintiff's defamation claim and prayer for punitive damages against Defendant Carpenter. Plaintiff may file an amended complaint within thirty days from the date of this memorandum and order.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARK SNAVELY,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:08-cv-2165** |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **DAVID ARNOLD, ROBERT ANSPACH,** | : | |
| **WILLIAM HARVEY, DANIEL WRIGHT,** | : | |
| **ROBERT McALLISTER, CITY OF** | : | |
| **LEBANON, and WILLIAM CARPENTER,** | : | |
| **Defendants** | : | |

**ORDER**

**AND NOW**, this 17th day of June 2009, upon consideration of Defendants' motions to dismiss (Doc. Nos. 7 & 11), **IT IS HEREBY ORDERED** that the motions to dismiss are **granted** as to Defendants Arnold, Anspach, Harvey, Wright, McAllister, and City of Lebanon. **IT IS FURTHER ORDERED** that the motion to dismiss is **granted in part and denied in part** as to Defendant Carpenter. All claims are dismissed except the prayer for punitive damages and the defamation claim against Defendant Carpenter. Plaintiff is given leave to amend his complaint within thirty (30) days of the date of this order.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District Pennsylvania